UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LUIGI ONORATO,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. CV-08-0329-JPH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 15, 21.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Luigi Onorato (plaintiff) protectively filed for social security income (SSI) on August 30, 2005 (Tr.70, 93.) Plaintiff alleged an onset date of January 1, 2002. (Tr. 70.) Benefits were denied initially and on reconsideration. (Tr. 46, 50.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul L. Gaughen on February 5, 2008. (Tr. 303-37.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 314-332.) Medical expert Allen D. Bostwick, Ph.D. and vocational expert Debra Lapoint also testified. (Tr. 305-313, 329-336.) At the hearing, the ALJ granted Plaintiff's motion to amend the alleged onset date to the protective filing date,

August 30, 2005.[1] (Tr. 305.) The ALJ denied benefits (Tr. 13-29) and the Appeals Council denied review. (Tr. I-A.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

At the time of the hearing, plaintiff was 27 years old. (Tr. 314.) He was home-schooled and received a high school diploma. (Tr. 315.) He last worked as a butcher at Sonnaberg's New Market and Deli. (Tr. 316.) He said the job ended because he was stressed about dealing with people and he quit the job because the manager got on him about being late. (Tr. 316-17.) He previously worked as a deck hand on a fishing boat, as a spray painter at a refrigeration business, stocked shelves at K-Mart, and worked at a pizza place for a few months. (Tr. 318-20.) He testified that he gets stressed, paranoid and depressed around people and that he does not sleep well, even with medication. (Tr. 321.) He also testified that he used to use pot and cocaine and quit on his own in 2005 or 2006. (Tr. 323.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

---

[1]Onset for SSI is established as of the date of filing and no retroactive benefits are available. S.S.R. 83-20.

upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of

impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since August 30, 2005, the application date. (Tr. 15.) At step two, he found Plaintiff has the following severe impairments: substance addiction disorder; schizoaffective disorder or affective disorder associated with drug and alcohol dependence; and malingering. (Tr. 15.) At step three,

the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 20.) The ALJ then determined:

> [B]ased on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform all work as defined in 20 CFR 415.967(c) except he would be moderately limited in understanding, remembering and following complex instructions; in learning new tasks; in exercising judgment and making decisions; in interacting appropriately in public contacts; and in controlling physical or motor movements and maintaining appropriate behavior and he would be markedly limited in relating appropriately to coworkers and supervisors and in responding appropriately to and tolerating the pressures and expectations of a normal work setting.

(Tr. 22.) At step four, the ALJ found plaintiff is unable to perform past relevant work. (Tr. 22.) After taking into account plaintiff's age, education, work experience, residual functional capacity, and based on all of plaintiff's impairments including substance use disorder, the ALJ found there are no jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 23.)

Because the record contains evidence of drug and alcohol addiction, the ALJ then conducted a second five-step analysis without the effects of drug and alcohol use. The ALJ found that if plaintiff stopped substance use, plaintiff would continue to have a severe impairment or combination of impairments, but would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 24.) Next, the ALJ determined:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform all work as defined in 20 CFR 416.967(c) except he is capable of following simple instructions and procedures and cannot always do tasks calling for higher level social interactions.

(Tr. 25.) The ALJ found plaintiff is unable to perform any past relevant work. (Tr. 28.) However, if plaintiff stopped the substance use, and after considering the plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there would be a significant number of jobs in the national economy that the plaintiff could perform; therefore, the ALJ concluded a finding of "not disabled" is appropriate. (Tr. 28-29.) Because plaintiff would not be disabled if he stopped the substance use, the ALJ determined plaintiff's substance use disorders are contributing factors material to the determination of disability. (Tr. 29.) Thus, the ALJ concluded

plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. (Tr. 29.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to set forth legally sufficient reasons for rejecting the opinions of an examining psychologist; (2) relying on the opinion of the medical expert in rejecting a bipolar diagnosis; (3) improperly interpreting the drug and alcohol use evidence; and (4) failing to reject the opinion of a consulting psychologist. (Ct. Rec. 16 at 12-15.) Defendant argues the ALJ: (1) properly considered the medical evidence; and (2) conducted a proper drug and alcohol abuse analysis. (Ct. Rec. 22 at 11-20.)

**DISCUSSION**

**1. Dr. Rosekrans**

Plaintiff argues the ALJ improperly rejected the opinions of examining psychologist Dr. Rosekrans in favor of the opinion of the opinion of the medical expert, Dr. Bostwick. (Ct. Rec. 16 at 12-14.) On May 5, 2005, Dr. Rosekrans diagnosed schizophrenia, paranoid type. (Tr. 233-35.) On a DSHS Psychological/Psychiatric Evaluation form, he assessed two severe and three marked functional limitations. (Tr. 229-32.) In a second assessment dated May 9, 2006, Dr. Rosekrans diagnosed schizoaffective disorder and borderline intellectual functioning. (Tr. 140-44.) He assessed three marked limitations and two moderate functional limitations. (Tr. 136-39.) After a third evaluation on January 10, 2008, Dr. Rosekrans again diagnosed schizoaffective disorder and borderline intellectual functioning. (Tr. 286-88.) He assessed two marked and five moderate functional limitations. (Tr. 282-85.)

At the hearing, plaintiff's counsel posed two hypotheticals to the vocational expert: one based on the limitations identified in Dr. Rosekrans' May 9, 2006 report and one based on the limitations identified in Dr. Rosekrans' January 10, 2008 report. (Tr. 335.) The vocational expert opined that there would be no work an individual with the limitations identified in either hypothetical could perform. (Tr. 335.) Therefore, if Dr. Rosekrans' opinions were improperly rejected by the ALJ, plaintiff is disabled. Thus, proper consideration of Dr. Rosekrans' opinion is critical to the disability

determination.

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The opinion of a non-examining physician may be accepted as substantial evidence only if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Dr. Rosekrans is an examining psychologist. His opinion was contradicted by the medical expert, Dr. Bostwick. Dr. Bostwick opined that the diagnoses of schizophrenic affective disorder and borderline intellectual functioning were not supported by the objective psychological testing results. (Tr. 306.) Thus, the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Rosekrans' opinion.

The ALJ assigned limited weight to Dr. Rosekrans' report and assessment dated January 10, 2008. (Tr. 27.) The ALJ gave two reasons for rejecting the report. First, the ALJ agreed with Dr. Bostwick's testimony which noted that Dr. Rosekrans did not administer any psychological testing before diagnosing schizoaffective disorder and borderline intellectual functioning. (Tr. 27-28, 306.) Dr. Bostwick observed that Dr. Rosekrans based his January 10, 2008 opinion on test scores obtained during the May 9, 2006 examination. (Tr. 28, 306-07.) The test scores were invalid and the plaintiff completed part of one of the tests in 15 minutes, which Dr. Rosekrans himself indicated was "hardly possible if a person is reading and thinking about the questions." (Tr. 28, 143.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). It is the ALJ's duty to resolve conflicts and ambiguity in the evidence.

*See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). Even though Dr. Rosekrans is an examining psychologist and Dr. Bostwick is a reviewing psychologist, Dr. Bostwick's opinion can properly be credited because he was subject to cross-examination. *Andrews*, 5 F.3d at 1042. Furthermore, when the opinion of a nonexamining psychologist is consistent with other evidence, it may be entitled to greater weight than the opinion of an examining psychologist. *See id.* at 1041-43. Dr. Bostwick described inconsistencies in Dr. Rosekrans' conclusions and made conclusions based on data collected by Dr. Rosekrans. (Tr. 17-20, 306-08.) It was therefore reasonable for the ALJ to cite Dr. Bostwick's testimony as the basis for one of the reasons for rejecting Dr. Rosekrans' opinions. The inconsistency and lack of objective support for Dr. Rosekrans' conclusions is a specific, legitimate reason for rejecting his reports.

Furthermore, the ALJ did not rely on Dr. Bostwick's testimony alone in rejecting Dr. Rosekrans' report. The second reason cited by the ALJ is that Dr. Rosekrans' report is inconsistent with the report of another examining psychologist. (Tr. 28.) Dr. Bailey examined plaintiff and prepared a report dated November 28, 2005.[2] (Tr. 191-202.) Dr. Bailey also conducted objective testing and found the test results indicated plaintiff was malingering. (Tr. 193-94.) Dr. Bailey diagnosed malingering and no other mental disorder or limitation. (Tr. 194.) Every psychologist who reviewed Dr. Bailey's report concluded his diagnosis of malingering was justified by the evidence. (Tr. 172, 189, 140, 286.) The ALJ discussed Dr. Bailey's findings in detail and gave weight to his opinion. (Tr. 16-17, 22.) It was reasonable for the ALJ to resolve the conflict between Dr. Rosekrans' assessments and Dr. Bailey's assessments by rejecting Dr. Rosekrans' conclusions and crediting Dr. Bailey's opinion in light of other evidence in the record. Thus, Dr. Bailey's conflicting opinion is a specific, legitimate reason for rejecting Dr. Rosekrans' assessment.

Additionally, the ALJ mentioned other evidence in the record consistent with the findings of

---

[2]Dr. Rosekrans' January 10, 2008 report mentions review of a second report by Dr. Bailey dated March 21, 2006. (Tr. 286.) A March 21, 2006 assessment by Dr. Bailey is not found in the record. However, based on Dr. Rosekrans' summary of the report, it does not appear critical to the disability determination. Dr. Bailey again conducted objective testing and again diagnosed malingering, which Dr. Rosekrans noted was "clearly justified." (Tr. 286.)

Dr. Bostwick and Dr. Bailey.[3] Dr. Gentile, a state consulting psychologist, also concluded plaintiff was malingering as the only diagnosis. (Tr. 189.) The ALJ noted that records from treating and consulting providers do not support plaintiff's opinion that he is unable to perform work activities, as medication has been relatively effective in controlling his symptoms. (Tr. 26, 239, 243, 245, 258, 271, 287.) Plaintiff reported that his symptoms are stable on medication and he denied feeling depressed, hopeless, or having little interest or pleasure in doing things. (Tr. 26, 162, 216, 222.) The ALJ also pointed out inconsistencies in plaintiff's testimony and his reports to providers and written function reports, especially regarding activities of daily living. (Tr. 27.) The ALJ noted plaintiff has a minimal mental health treatment history and he is capable of scoring the normal range on the Trails A and B psychological tests and on the mini-mental status examination. (Tr. 27, 142, 287-88.) This evidence, combined with the opinions of Dr. Bailey and Dr. Bostwick, constitutes substantial evidence supporting the ALJ's decision. Therefore, the ALJ cited sufficient specific, legitimate reasons supported by substantial evidence in the record for rejecting the opinion of Dr. Rosekrans and, as a result, the ALJ did not err.

Plaintiff also argues the ALJ erred by failing to specifically reject Dr. Rosekrans' May 2006 and May 2005 opinions. However, a specific incantation that a physician's report is rejected is not required; the court may draw reasonable inferences from the ALJ's discussion of a particular physician's report. *See Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ's discussion of the 2006 opinion leaves little doubt that it was also rejected by the ALJ for the reasons the February 2008 report was rejected. (Tr. 27-28, 18-20.) Dr. Rosekrans' 2005 evaluation contains essentially the same conclusions as the 2006 report: plaintiff's objective test scores reflect malingering, but Dr. Rosekrans determined plaintiff is making a "cry for help" (2005) and is "foolishly exaggerating, in order to get support and medication" (2006). (Tr. 16, 143, 234.) The ALJ clearly considered the 2005 report, although he did not assign weight to it. (Tr. 16.) The ALJ need

---

[3]The ALJ was not required explicitly to link his determination regarding Dr. Rosekrans' report to these reasons. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In light of the similarity of the conclusions in Dr. Rosekrans' reports, the 2005 report is not particularly probative. Plaintiff does not point to any statement or conclusion in the report which is probative or which would change the ALJ's analysis. As a result, the ALJ did not err in failing to explicitly reject Dr. Rosekrans' 2005 assessment.

**2. Drug and Alcohol Analysis**

A finding of "disabled" under the sequential evaluation process does not automatically qualify a claimant for disability benefits when there is evidence of alcohol or drug abuse. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) The Contract with America Advancement Act of 1996 (CAAA) amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(c). Special statutes and regulations govern disability claims involving substance abuse.

Under the Regulations implemented by the Commissioner, the ALJ must follow a specific analysis that incorporates the sequential evaluation discussed above. 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ must conduct the five step inquiry without attempting to determine the impact of substance addiction. If the ALJ finds the claimant is not disabled under the five step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Id.* If the ALJ finds the claimant disabled, and there is evidence of substance addiction, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001.) If the claimant is found disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). As stated by the *Parra* court, a drug addicted claimant "who presents inconclusive evidence of materiality has no incentive to stop [abusing drugs], because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." *Id.* Thus, through the CAAA, Congress seeks "to discourage alcohol and drug abuse, or

at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d at 817, 824 (9th Cir. 2001).

Plaintiff argues the ALJ's finding that plaintiff's substance use was a contributing factor material to the determination of disability is not supported by the record. (Ct. Rec. 16 at 14.) The ALJ first conducted the sequential evaluation process without regard to the substance addiction evidence. (Tr. 15-24.) Because there is evidence of substance addiction, the ALJ then conducted a drug and alcohol analysis. (Tr. 24-29.) The ALJ concluded plaintiff's "substance abuse is clearly material" and found plaintiff's substance use disorder is a factor material to the determination of disability. (Tr. 27, 29.)

Plaintiff asserts that the ALJ's reference to plaintiff's "ongoing substance abuse" is not supported by the record. (Ct. Rec. 16 at 14.) It is plaintiff's burden to prove that his substance abuse is not a contributing factor material to the disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). Plaintiff relies on the testimony of Dr. Bostwick, who indicated that relapses in April 2005 and May 2006 were isolated incidents. (Ct. Rec. 16 at 14, Tr. 305.) Dr. Bostwick also stated there are no other references to drugs or alcohol in the record. (Tr. 305.) However, as the ALJ noted, Dr. Bostwick also indicated he was not sure how long plaintiff had been using and pointed out plaintiff's self-reports are not credible, including his history of drugs and alcohol. (Tr. 305-06.)

The ALJ also cited a number of other references to drug use throughout the record. Plaintiff denied heavy use or history of treatment to Dr. Bailey, but admitted using marijuana in 2004. (Tr. 16, 191.) On May 11, 2006, Dr. McGalliard, a physician, recorded plaintiff's reported two-week relapse on cocaine and meth in mid-April 2006. (Tr. 17, 241-42.) Plaintiff was staying in a recovery house and was anxious to remain sober. (Tr. 242.) Plaintiff indicated that in the past, he had been sober for up to five months. (Tr. 242.) In August 2007, plaintiff reported he last used nine months prior, or around November 2006, and that he abused heroine, meth and cocaine. (Tr. 273.) He also said he last used marijuana in 2004. (Tr. 274.) In November 2007, plaintiff reported he used drugs daily from 2001 to 2003, but had been clean for one year, suggesting he had used around November 2006. (Tr. 19, 292.) Additionally, in making a negative credibility finding, the ALJ pointed out plaintiff has

misrepresented past drug use and repeatedly denied a drug history.[4] (Tr. 27, 140, 207-210, 222, 224, 233, 286.) In all, the ALJ cited substantial evidence supported by the record justifying the finding that drug use was material to plaintiff's disability.

**3. CHAS Clinic**

Plaintiff argues the ALJ improperly considered records from CHAS clinic which contained a diagnosis of bipolar affective disorder, mixed. (Ct. Rec. 16 at 14.) Plaintiff asserts the ALJ erroneously used Dr. Bostwick's testimony to reject a treating source opinion regarding plaintiff's mental impairment. (Ct. Rec. 16 at 14.) The bipolar affective disorder, mixed, diagnosis first appears in treatment notes of Michael Yourzek, PA, dated March 23, 2005.[5] (Tr. 220-21.) A physician, Dr. McGalliard, repeated the diagnosis on May 11, 2006. (Tr. 241-42.) The ALJ indicated he considered the CHAS records and the diagnosis of bipolar affective disorder, mixed, but stated he "again agrees with Dr. Bostwick's analysis regarding bipolar symptoms and concludes that they are associated with ongoing substance use." (Tr. 28.)

Plaintiff's argument is focused on the ALJ's weighing of the evidence, but also suggests the ALJ improperly failed to find bipolar affective disorder a severe impairment at step two. At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an

---

[4]Plaintiff has not challenged the credibility finding and the court concludes it is supported by evidence of malingering as well as other clear and convincing evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). (Tr. 25-27.)

[5]It is noted that Mr. Yourzek diagnosed bipolar affective disorder, mixed, during a visit for medication refills without comment or noting any bipolar symptoms. (Tr. 220-21.)

underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).

It was not error for the court to consider Dr. Bostwick's analysis of the evidence in evaluating the bipolar diagnosis at step two for the same reasons it was not error to consider Dr. Bostwick's opinion regarding Dr. Rosekrans' reports, discussed above. "Both the regulations, 20 C.F.R. § 416.927(d)(1), and our precedent, *see Pitzer*, 908 F.2d at 506 n. 4, state that the conclusion of a nonexamining expert is generally entitled to less weight than the conclusion of an examining [or treating] physician. However, giving the examining [or treating] physician's opinion *more* weight than the nonexamining expert's opinion does not mean that the opinions of nonexamining sources and medical advisors are entitled to *no* weight." *Andrews*, 53 F.3d at 1041. Where, as here, other substantial evidence supports the medical expert's findings, the ALJ may properly rely on the expert's testimony. *See id.* Dr. Bostwick's testimony suggested CHAS clinic was treating plaintiff's reported symptoms without an objective assessment. (Tr. 311.) Dr. Bostwick ultimately concluded there was no objective evidence supporting medically determinable impairment. (Tr. 308, 311.) The ALJ reasonably relied on Dr. Bostwick's analysis of the CHAS evidence as a reason for rejecting the CHAS diagnosis.

The ALJ also properly considered evidence of substance abuse in rejecting the bipolar diagnosis. Evidence of substance abuse was recorded by CHAS providers during the time plaintiff was seen at CHAS, and Dr. McGalliard diagnosed drug dependence in addition to bipolar disorder. (Tr. 241-42, 273-74 .) There is no other evidence establishing bipolar disorder in the record, particularly by any psychological source. It was therefore reasonable for the ALJ to conclude that plaintiff's bipolar symptoms were affected by plaintiff's substance abuse. Thus, the ALJ did not err in rejecting the CHAS bipolar diagnosis.

**4. Dr. Winslow**

Plaintiff argues the ALJ did not reject the opinion of Dr. Winslow, a state reviewing

psychologist. (Ct. Rec. 16 at 15.) Dr. Winslow prepared a Medical Consultant's Review of Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form on December 22, 2005. (Tr. 171-75.) Dr. Winslow reviewed the evidence and the previous Psychiatric Review Technique prepared by Dr. Gentile, another state reviewing psychologist on December 2, 2005. (Tr. 177-89.) Dr. Gentile found insufficient evidence of paranoid schizophrenia, diagnosed malingering, and identified no medically determinable impairment. (Tr. 177-89.) Dr. Winslow agreed with Dr. Gentile's assessment, except for the determination that plaintiff suffers no medically determinable impairment. (Tr. 171.) Dr. Winslow stated, "I personally think he has schizophrenia," and assessed a number of moderate functional limitations. (Tr. 172.) The ALJ did not specifically mention Dr. Winslow's opinion, although he gave weight to Dr. Gentile's report and stated, "Opinions made by State agency medical professionals regarding the nature and severity of an individual's impairments are granted probative weight as expert opinion evidence by a non-examining source (SSR 96-6p)." (Tr. 22, 28.)

While the ALJ did not specifically state that he rejected Dr. Winslow's opinion, such a statement is not required. As noted above, the ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Furthermore, a specific statement that a physician's report is rejected is not required; the court may draw reasonable inferences from the ALJ's discussion of a particular physician's report. *See Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Dr. Winslow and Dr. Gentile reviewed the same evidence and came to different conclusions. (Tr. 172, 177.) The ALJ agreed with Dr. Gentile's reasoning and gave it weight, based on all of the evidence. It is reasonable to infer, therefore, that he did not give weight to Dr. Winslow's contrary conclusion.

It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In this case, the ALJ agreed with Dr. Gentile's analysis and conclusions, which is supported by substantial evidence in the record.

Although another ALJ may have rejected Dr. Gentile's opinion in favor of Dr. Winslow's opinion, it was not legal error for the ALJ to give weight to Dr. Gentile's opinion and no weight to Dr. Winslow's opinion.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 21)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED September 4, 2009.

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE